IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-01677-MSK-BNB

UNUM LIFE INSURANCE COMPANY OF AMERICA, a Maine corporation,

Plaintiff,

v.

WILLIAM B. LINVILLE,
WESLEY B. LINVILLE,
WILEY M. LINVILLE, and
DANIEL MASON,

Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter is before me on the following motions:

(1)     **Stipulated Second Amended Motion to Deposit Funds Into the Registry of the Court, for Discharge and Dismissal, and for Award of Amount Due for Attorneys Fees and Costs** [Doc. # 23, filed 2/9/06] (the "Motion for Discharge") filed by Unum Life Insurance Company of America ("Unum"), the stakeholder; and

(2)     **Defendants' Motion for Default Judgment** [Doc. # 20, filed 1/20/06] (the "Motion for Default") by defendants William B. Linville, Wesley D. Linville, and Wiley M. Linville (the "Linville Claimants") and against defendant Daniel Mason.

I held an evidentiary hearing on the motions on April 3, 2006, and took the matters under advisement. I now respectfully RECOMMEND that the Motion for Discharge be GRANTED. I also respectfully RECOMMEND that the Motion for Default be GRANTED and that a default

judgment be entered in favor of the Linville Claimants pursuant to Fed. R. Civ. P. 55(b).

This is an interpleader action involving the proceeds of a life insurance policy. There are two sets of claimants--the named beneficiary, Daniel Mason, on the one hand, and the Linville Claimants, sons of the decedent/insured, on the other hand. The Clerk of the Court entered a default pursuant to Fed. R. Civ. P. 55(a) on January 24, 2006, against Daniel Mason for failing to file an answer or otherwise defend the action. The Linville Claimants moved for entry of a default judgment on January 20, 2006. By minute order dated March 7, 2006, I set the Motion for Default Judgment for hearing on April 3, 2006, at 10:00 a.m., and I ordered the Linville Claimants to mail a copy of the order setting that hearing to Daniel Mason at his last known address. Minute Order [Doc. # 26, filed 3/7/06] at p.2. The Linville Claimants filed a Certificate of Compliance [Doc. # 28, filed 3/13/06] indicating that they had mailed a copy of the minute order to Daniel Mason at his last known address at 9653 Townsville Circle, Littleton, Colorado. Daniel Mason did not appear at the hearing on April 3, 2006.

**LEGAL STANDARD**

The entry of a default judgment is controlled by Fed. R. Civ. P. 55(b), which provides in relevant part:

> Judgment by default may be entered as follows:
> \* \* \*
> (2) By the Court. In all other cases [not subject to subpart (b)(1)] the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party . . . shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.

> If, in order to enable the court to enter judgment or to carry it into
> effect, it is necessary to take an account or to determine the amount
> of damages or to establish the truth of any averment by evidence or
> to make an investigation of any other matter, the court may conduct
> such hearings or order such references as it deems necessary and
> proper and shall accord a right of trial by jury to the parties when
> and as required by any statute of the United States.

Rule 55(a), Fed. R. Civ. P., allows a default against a party when that party has "failed to plead or otherwise defend" itself. A trial court is vested with broad discretion in deciding whether to enter a default judgment. Grandbouche v. Clancy, 825 F.2d 1463, 1468 (10th Cir. 1987).

Once the default is established, the defaulting party has no further standing to contest the factual allegations of plaintiff's claim for relief." 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2688 at p.63; accord Olcott v. Delaware Flood Co., 327 F.3d 1115, 1125 n.11 (10th Cir. 2003)(stating that "[a]fter an entry of default, a defendant cannot defend a claim on the merits," citing Jackson v. FIE Corp., 302 F.3d 515, 514-25 (5th Cir. 2002)). In addition:

> Even after default, however, it remains for the court to consider
> whether the unchallenged facts constitute a legitimate cause of
> action, since a party in default does not admit mere conclusions of
> law. . . . Once the court determines that a judgment by default
> should be entered, it will determine the amount and character of the
> recovery that should be awarded.

10A Wright, Miller & Kane, supra.

**FINDINGS AND CONCLUSIONS**

1.     This action was commenced by the filing of a Complaint In Interpleader (the "Complaint") on August 29, 2005. Jurisdiction exists pursuant to 29 U.S.C. § 1001 (ERISA).

2.     Daniel Mason was served with a summons and a copy of the Complaint on

December 15, 2005.  Affidavit of Personal Service [Doc. # 13, filed 1/3/06].  No answer or other response to the Complaint has been received from Daniel Mason.

3. Daniel Mason is not an infant, incompetent person, officer or agent of the United States or the State of Colorado, or in the military service.  Testimony of Wiley M. Linville ("Linville test."), admitted into evidence on April 3, 2006.

4. Nancy Mason was a participant in the HCA, Inc., Life, Accidental Death & Dismemberment Plan, #552687 (the "Plan").  The Plan provided accidental death and dismemberment insurance to Nancy Mason in the principal amount of $54,000.  Complaint, ¶7.

5. Nancy Mason died on May 30, 2004.  Id. at ¶8.

6. Daniel Mason was Nancy Mason's husband at the time of her death and listed as her beneficiary under the Plan.  Id.  Daniel Mason has demanded payment of Nancy Mason's life insurance benefits from Unum.  Id.

7. The undisputed allegations of the Complaint are that Daniel Mason is disqualified from receiving the benefits from Nancy Mason's life insurance policy pursuant to 15-11-803, C.R.S.  Id. at ¶¶11-13.  Implicit in those allegations is the assertion that Daniel Mason feloniously killed Nancy Mason.

8. The Plan provides as follows:

> HOW DO YOU DESIGNATE OR CHANGE A BENEFICIARY?
> \* \* \*
> If you do not name a beneficiary, or it all named beneficiaries do not survive you, *or if your named beneficiary is disqualified*, your death benefits will be paid to your estate.

4

> Instead of making a death payment to your estate, Unum has the
> right to make payment to the first surviving family members or the
> family members in the order listed below:
> --spouse;
> --child or children;
> --mother or father; or
> --sisters or brothers.

Id. at ¶10 (emphasis added).

9. William, Wesley, and Wiley Linville are the sole children of Nancy Mason. Id. at ¶12; Exhibit A ("William Linville aff.") at ¶¶3-4. The Linville Claimants assert their rights to the proceeds of the life insurance policy pursuant to section 15-11-803, C.R.S. Complaint, ¶13; Answer and Petition Under C.R.S. § 15-11-803 [Doc. #6, filed 10/28/05] (the "Petition") at ¶¶4-5.

10. The parties stipulate that Unum is entitled to an award of its costs and attorneys' fees in this action in the amount of $8,000.00. Motion for Discharge at ¶5.

**ANALYSIS**

    **1.**     **Discharge of Unum Upon Payment of the Benefits to the Court Registry**

Through its Motion for Discharge, Unum as the stakeholder of the life insurance proceeds seeks an order:

(1) Directing that it pay into the registry of the court the life insurance proceeds plus interest;

(2) Directing the Clerk of the Court to issue a check to Unum in the amount of $8,000, representing its reasonable attorneys' fees in connection with this action;

(3) Directing the Clerk of the Court to issue a check to the Linville Claimants for the balance of the interpleaded funds;

(4)     Discharging Unum from any further liability in connection with the life insurance proceeds for the benefit of Nancy Mason under the HCAS, Inc. Life, Accidental Death & Dismemberment Plan # 552686;

(5)     Enjoining the defendants from instituting or prosecuting any suit or proceeding against Unum in any other court in connection with the life insurance proceeds for the benefit of Nancy Mason under the HCAS, Inc. Life, Accidental Death & Dismemberment Plan # 552686; and

(6)     Dismissing this action with prejudice.

Motion for Discharge at pp.2-3.

"Interpleader in federal courts comes in two varieties, known colloquially as statutory interpleader and rule interpleader." Donald L. Doernberg, *What's Wrong With This Picture?: Rule Interpleader, the Anti-Injunction Act, In Personam Jurisdiction, and M.C. Escher*, 67 U. COLO. L. REV. 551, 553 (1996). Statutory interpleader is founded on 28 U.S.C. § 1335, and rule interpleader derives from Rule 22, Fed. R. Civ. P.

In this case, federal jurisdiction is asserted under the provisions of ERISA, 29 U.S.C. § 1001. There is no diversity of citizenship nor any allegation of diversity jurisdiction. To the contrary, the allegations of the Complaint establish that diversity of citizenship among the claimants does not exist. In particular, Daniel Mason's last known address is alleged to be in Colorado. Complaint, ¶5. Wesley and Wiley Linville also are alleged to reside in Colorado. Id. at ¶¶3-4. Only William Linville is diverse, residing in Alabama. Id. at ¶ 2. There is no assertion of jurisdiction under the interpleader statute, found at 28 U.S.C. § 1335. Consequently, it appears that this is a rule interpleader brought pursuant to Rule 22, Fed. R. Civ. P. See Selective Ins. Co.

of America v. Norris, 209 F. Supp. 2d 580, 582 (E.D.N.C. 2002)(explaining the differences between rule interpleader and statutory interpleader and noting that statutory interpleader requires diversity among the claimants); 7 Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1703 (same).

I turn first to Unum's request to pay the life insurance proceeds into the registry of the court and to obtain a discharge from any further liability in connection with those proceeds. Unum has met all of the requirements of rule interpleader. It is prepared to deposit the disputed proceeds from Nancy Mason's life insurance into the court's registry; it faces double or multiple liability in connection with the payment of the life insurance proceeds; and it has joined in this action all of the claimants to those proceeds. As the court noted in American Home Life Ins. Co. v. Barber, 2003 WL 21289986 (D. Kan. May 16, 2003):

> Where an insurance company is a mere stakeholder and can contribute nothing toward resolution of the issues between the other parties, its interpleader action is properly filed, and no genuine issue exists as to its rights and liabilities, it should be discharged from any and all liability arising out of or based on the policies involved, except to pay the proceeds of such policies to the party or parties ultimately adjudged to be entitled thereto.

Id. at *2 (internal quotations and citations omitted).

Here, as in the American Home case, the insurance company is entitled to be dismissed from the case with prejudice and discharged from any further liability associated with the life insurance benefits upon the payment of those proceeds into the registry of the court.

I next consider Unum's request for an award of its costs and attorneys' fees in connection with bringing this interpleader action. Although not expressly addressed in either Rule 22 or the interpleader statute, a federal court has discretion to award the costs and attorneys' fees incurred

by the interpleader stakeholder whenever it is fair and equitable to do so. 7 Wright, Miller & Kane, supra, §1719 at pp.674-76. The award of costs and fees is particularly appropriate where, as here, the party initiating the interpleader is acting merely as a stakeholder; claims no interest in the disputed funds; admits its liability to pay the funds but faces the risk of multiplicity of actions from competing claimants; and acts promptly to have the competing claims to the funds resolved. Id. at pp.677-86.

The Tenth Circuit Court of Appeals has recognized the "common practice" of reimbursing an interpleader plaintiff's litigation costs out of the interpleaded funds. United States Fidelity & Guaranty Co. v. Sidwell, 525 F.2d 472, 475 (10th Cir. 1975). The rationale for the award is that the plaintiff has, at its own expense, facilitated the efficient resolution of a dispute in which it has no interest, other than avoiding liability for an erroneous distribution of the stake; to the benefit of the competing claimants, who are the true disputants and who can cover the relatively minor expense involved out of the fund distributed to them. American Home, 2003 WL 21289986 at *3. Consequently:

> Where the stakeholder is disinterested, i.e., does not claim any right to the fund, concedes its liability in full, deposits the fund in the court, seeks discharge, and does not appear to the court to be culpable, it is appropriate and equitable to allow fees and costs from the fund.

Irwin v. Principal Life Ins. Co., 404 F. Supp 2d 1271, 1278 (D. Kan. 2005).

In this case, the requested costs and attorneys' fees are relatively modest; were reasonably and necessarily incurred in connection with the disputed claims to the insurance proceeds; and

are agreed to among the parties appearing.  Accordingly, Unum is entitled to an award of its costs and reasonable attorneys' fees in the agreed amount of $8,000.00.

Finally, Unum seeks a permanent injunction barring the defendants in this action from instituting or prosecuting any other suit or proceeding against Unum in any other court in connection with the life insurance proceeds.  The purpose of the requested injunction is obvious:

> Interpleader is a procedural device designed to settle conflicting claims to property usually (though not always) held by a non-claimant without exposing the possessor to multiple of inconsistent judgments. . . .  For interpleader to be effective, claimants must not be able to seek possession of the stake except in the interpleader proceeding; were they able to do so, the interpleader court might enter a judgment only to discover that the stake had already been delivered to one claimant pursuant to another proceeding.  Accordingly, the interpleader court must be able to enjoin either the claimants or other courts from pursuing litigation inconsistent with the interpleader action.

Doernberg, supra, at 552.

The ability of a federal court in a statutory interpleader action to enjoin any other actions concerning the interpleaded property is clear because the interpleader statute expressly allows such injunctions.  28 U.S.C. § 2361 (allowing a court in a statutory interpleader action to enter an order "restraining [the claimants] from instituting or prosecuting any proceeding in any State or United States court affecting the property" and to "make the injunction permanent").  The authority to enter such an injunction is not as clear in the case of a rule interpleader, as here, where there is no express authority to enter such an injunction and in view of the federal Anti-Injunction Act.  See Doernberg, supra, at pp.552-54.  The Anti-Injunction Act generally prevents a federal court from enjoining state court proceedings.  Id. at 553.  However:

> The lower federal courts, implicitly recognizing the inutility of rule interpleader without injunctions, have issued injunctions regularly, solving the potential problem of the Anti-Injunction Act by declaring such injunctions necessary in aid of the court's jurisdiction.

Id. at 566 (internal notes omitted).

The basis for a court entering an injunction prohibiting the parties before it in an interpleader action from asserting claims to the stake in other actions, even in rule interpleader cases, is persuasively explained in the Federal Practice and Procedure treatise as follows:

> One argument against recognizing the court's discretion to enjoin overlapping proceedings in rule-interpleader cases is that it might result in a significant incursion on the policies embodied in the federal statute prohibiting injunctions against state-court proceedings [the Anti-Injunction Act] except in certain carefully defined situations. But the latter statute permits a federal court to issue an order to stay proceedings in a state court where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. A preliminary injunction to stay a state-court action while the federal court determines the Rule 22 interpleader case might be regarded as necessary in aid of its jurisdiction and a permanent injunction at the conclusion of the federal action may be needed to protect or effectuate its judgment. Accordingly, the proper accommodation between the policy against enjoining state proceedings and the objectives of rule interpleader is to recognize the federal court's power to issue an order whenever a pending state-court action represents a threat to the effectiveness of the interpleader suit or the enforceability of its judgment. It also should be noted that the anti-injunction statute does not bar a federal court from enjoining the parties from pursuing another federal-court action or preventing the parties in the interpleader suit from instituting a state-court action.

7 Wright, Miller & Kane, supra, §1717 at pp.660-62. I agree with the explanation offered by Professors Wright, Miller and Kane, and I agree that Unum is entitled to an injunction

prohibiting any of the Linville Claimants or Daniel Mason from asserting their claims to the proceeds of Nancy Mason's life insurance proceeds except within this interpleader action.

### 2. The Linville Claimants' Entitlement to the Benefits

Section 15-11-803, C.R.S., known as the "slayer statute," is a statutory rule that prohibits the payment of life insurance benefits to the killer of an insured. <u>Lunsford v. Western States Life Ins.</u>, 908 P.2d 79, 83-84 (Colo. 1995). The statute provides, in relevant part:

> (3) **Revocation of benefits under governing instruments.**
> The felonious killing of the decedent:
>
> (a)  Revokes any revocable (I) disposition or appointment of property made by the decedent to the killer in a governing instrument. . . .
>
> \* \* \*
>
> (5) **Effect of revocation.** Provisions of a governing instrument are given effect as if the killer disclaimed all provision revoked by this section. . . .

Section 15-11-803 (3)(a) and (5), C.R.S.

The slayer statute applies to disqualify the killer under two circumstances. First, the statute applies to disqualify the killer following the exhaustion of all rights to appeal a conviction, plea of guilty, or plea of nolo contendere establishing the criminal accountability of the killer. Section 15-11-803(7), C.R.S. Second, and as applicable here, the statute applies to disqualify the killer under the following circumstances:

> Notwithstanding the status or disposition of a criminal proceeding, a court of competent jurisdiction, at any time, upon the petition of an interested person, shall determine whether, by a preponderance of evidence standard, each of the elements of felonious killing of the decedent has been established. If such elements have been so established, such determination conclusively establishes that individual as the decedent's killer for purposes of this section.

11

Id.

The Complaint and the Linville Claimants' Petition both allege that Daniel Mason is disqualified by the slayer statute from receiving Nancy Mason's life insurance benefits, which precludes payment to beneficiaries who have feloniously killed the insured. In view of Daniel Mason's default and failure to defend this suit, these allegations no longer are open to challenge and are accepted as true. Olcott, 327 F.3d at 1468. The Linville Claimants thus have established their right to receive the life insurance benefits pursuant to the section of the policy which, upon disqualification of the named beneficiary, allows direct payment to the insured's children as the first qualifying surviving family members.

**CONCLUSION**

I respectfully RECOMMEND that the Motion for Discharge be GRANTED and that an Order of the court be entered as follows:

1)     Directing Unum to deposit into the registry of the court the life insurance proceeds for the benefit of Nancy Mason under the HCA, Inc., Life, Accidental Death & Dismemberment Plan #552687 (the "Interpleaded Proceeds");

2)     Directing the Clerk of the Court to pay to Unum $8,000.00 from the Interpleaded Proceeds as an award of its costs and reasonable attorneys' fees incurred in bringing this interpleader action;

3)     Permanently enjoining the Linville Claimants and Daniel Mason from asserting their claims to the life insurance proceeds for the benefit of Nancy Mason under the HCA, Inc., Life, Accidental Death & Dismemberment Plan #552687, except within this action;

    4)    Discharging Unum from any further liability in connection with the life insurance proceeds for the benefit of Nancy Mason under the HCA, Inc., Life, Accidental Death & Dismemberment Plan #552687 ; and

    5)    Dismissing Unum from this action with prejudice.

I further RECOMMEND that the Motion for Default be GRANTED; that judgment by default be entered in favor of the Linville Claimants and against Daniel Mason on their claim to the life insurance proceeds for the benefit of Nancy Mason under the HCA, Inc., Life, Accidental Death & Dismemberment Plan #552687; and directing the Clerk of the Court to issue a check to the Linville Claimants in the full amount of the Interpleaded Funds minus the $8,000.00 awarded as costs and fees to Unum.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated April 20, 2006.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge